HARRIS COUNTY V. DONALDSON & HINES ET AL.

Decided December 22, 1898.

### 1. Partnership—Borrowing Money for Firm Use.

Where there was uncontradicted evidence that one member of a firm engaged in the grocery business and that of furnishing houses had authority from the firm to borrow money for firm use, the court could properly infer that borrowing money for the firm use was within the scope of the partnership.

### 2. Liquidated Damages or Penalty.

The sum of $10 per day for delay, as stipulated in a contract for the completion and furnishing of a courthouse and jail, will be treated as liquidated damages and not as a penalty, where the county, although it continued to use its old courthouse and jail, had no other place combining conveniences and appointments contemplated by the new structure, and the extent of the loss from the delay can not be accurately calculated.

### 3. Attorney Fees Not Recoverable.

A county is not entitled to attorney fees on recovering liquidated damages in an action against it on a contract for the construction of a courthouse and jail, where the contract does not provide for attorney fees.

### 4. Assignment of Fund—Liability of Debtor.

A debtor is not bound to pay an assignee of a part of the fund or debt until all parties having claims thereon are heard.

### 5. Costs of Suit.

A county is liable for all costs of an independent suit by it, where the same results could have been accomplished in a pending action, and also for the cost of the consolidation of the two actions and the increased cost of the transcript on appeal.

### 6. Assignment of Fund—Order of Payment.

An assignee of a claim who has no lien upon the fund out of which the claim is payable takes his rank in the order of the assignment.

### 7. Partnership Borrowing of Money—Rights of Lender.

Where a member of a firm had authority to borrow money, his failure to apply it to the partnership purposes for which he pretended to borrow it will not prejudice the rights of the lender.

APPEAL from Harris.   Tried below before Hon. WILLIAM H. WILSON.

*E. H. Vasmer,* for appellants.

*Hutcheson, Campbell & Myer, Tackaberry & Tackaberry,* and *Boyd & Thompson,* for appellees.

WILLIAMS, ASSOCIATE JUSTICE.—On the 27th day of May, 1897, an action was brought in the court below by Donaldson & Hines against Harris County to recover, for the benefit of certain named assignees, to whom plaintiffs had assigned parts of the fund sued for, the sum of two thousand nine hundred and eighty-four dollars, in which amount it was alleged the county had become indebted to Donaldson & Hines as the contract price for putting furniture in a building built by the county for its Criminal District Court and jail.  In this suit some of the assignees, to whom plaintiffs had assigned parts of the fund, intervened,

setting up their rights, and the county, on the 9th day of October, 1897, filed its answer, alleging the assertion of claims upon the money by other persons besides those named in plaintiffs' petition, and praying that such persons be made parties. The answer claimed also that certain deductions should be made from the amount claimed by plaintiffs on account of their failure to comply with the contract. The answer further alleged the pendency of another suit involving the same subject matter. The suit thus referred to was one in the nature of a bill of interpleader filed by the county on the 7th day of June, 1897, alleging the facts stated in the answer, claiming the same deductions and stating the existence of conflicting claims to the fund; in connection with which the county paid into court the sum of $1980, admitted by it to be due, and prayed for proper adjudications of the rights of all parties and protection to itself. To this latter action all persons interested were made parties and also appeared, filing pleadings raising the same issues as those made in the suit first filed.

This statement will show the nature of the proceedings sufficiently for the purposes of the decision, in which a review of the numerous pleadings filed in the two actions is not made necessary by the questions raised. The two causes were consolidated by the order of the court and a trial was had before the court without a jury and the judgment rendered, from which this appeal is prosecuted, in which the county, W. D. Cleveland & Co., B. A. Everts, A. L. Autrey & Co., and J. Shapley all assign errors.

The following is a statement of the facts found by us from the record thought to be essential to a disposition of the appeal:

On the 21st day of September, 1896, Donaldson & Hines made a contract with Harris County by which they agreed, in accordance with various stipulations not necessary to be stated, to "well and sufficiently perform and finish all the work included in the wood furniture for the Harris County Jail and Criminal Courtroom Building as per plans and specifications on file," etc. It is stated in the brief filed for Cleveland & Co. that the contract involved the furnishing of the courtroom and appurtenances only and not the jail, and the case is presented by all parties on this assumption, which the record indicates, though not very clearly, to be true. The plans, etc., by which the furniture was specified are not in the record, and we can not see whether or not the use of the jail by the county was dependent upon the performance of the contract by the contractors, but, as the case seems to have been tried below and is presented here on the assumption that it was not, we shall take it for granted that the contract called for the furnishing of the courthouse proper and not the jail, and that the terms above quoted were employed in the contract simply as descriptive of the building. The sixth clause of the contract, under which the principal question arises, is as follows:

"Sixth. The contractor shall and will proceed with the said work, and every part and detail thereof, in a prompt and diligent manner, and shall and will wholly finish the said work according to the said drawings

and specifications, and this contract, on or before the 25th day of November, in the year one thousand eight hundred and ninety-six; and in the default thereof the contractor shall pay to the owner ten dollars for every day thereafter that the work shall remain unfinished, as and for liquidated damages."

The seventh clause provides for extension of time for specified causes to be ascertained in a specified manner, "in which case the contractors shall be released from the payment of the stipulated damages for the additional time" certified and no more.

For the work and material the county agreed to pay the contractors the sum of twenty-nine hundred and eighty-four dollars on the second Monday of the month after the work should be completed.

The contract also contained the provision, relied on by the appellee, Shapley: "And provided further, that before each payment, if required, the contractor shall give the architect good and sufficient evidence that the premises are free from all liens and claims chargeable to the said contractors. The owner shall have the right to retain out of any payment then due or thereafter to become due, an amount to completely indemnify it against such lien or claim, until the same shall be effectually satisfied, discharged, or canceled. And, should there prove to be any such claim after all payments are made, the contractor shall refund to the owner all moneys that the latter may be compelled to pay in discharging any lien on said premises, made obligatory in consequence of the former's default."

The contractors did not complete the work by the time stipulated and extensions were granted until December 31, 1896. There was further delay in completing the work until April 3, 1897, when the county took possession. At that time the work was all complete and the furniture all in place except some items worth $104. The county had taken possession of the portion of the building constituting the jail on January 25, 1897, and thereafter used it. Owing to the fact that the furnishing of the courthouse was not completed, the county could not use it before the date first stated. The Criminal Court was, prior to that date, held in a room of the old courthouse, and the February term was held there. The new jail, where the prisoners were kept during this term, was distant more than a mile therefrom, without public conveyance between them, and the proceedings of this term of the court were delayed and obstructed by the necessity of having the prisoners taken back and forth, one witness stating that at least one-third of time was thus lost. There were daily in attendance from twenty-four to twenty-six jurors and also a sheriff or deputy, all of whom were paid by the county for the attendance upon court, and who were thus left unemployed for a considerable portion of the time.

The county, in anticipation of the occupancy of the new building, had sold its old jail to the city, taking the note of the latter for $7500. During the time between December 31, 1896, and January 25, 1897, the county rented the jail from the city at the rate of $50 per month, and re-

mitted the interest upon the note at 6 per cent. The new courthouse and jail building cost $80,300, and the ground on which it stood cost the county $15,000. Several real estate agents gave their opinion as to the value of the rent of the courthouse and appurtenances, placing it at from $200 to $300 per month. They admitted that, though possessing knowledge of rental values generally, they could not well judge as to such buildings because they were never rented. One of them, however, stated that if the county had no such building, one like it could not be rented for less than $300 per month.

Before the maturity of the county's obligation to pay for the work, Donaldson & Hines, or Donaldson for the firm, had executed assignments of parts of the fund to various parties of various amounts, amounting in the aggregate to more than the price stipulated in the contract, and before any suit was brought the county received notice of other claims asserted against the fund.

The assignments first named were as follows:

| "Name. | Date. | | Amount. |
|---|---|---|---|
| A. L. Autrey & Co. | December | 1, 1896 | $500.00 |
| W. D. Cleveland & Co. | January | 14, 1897 | 1200.70 |
| W. D. Cleveland & Co. | February | 9, 1897 | 218.72 |
| B. A. Everts | February | 5, 1897 | 450.00 |
| W. D. Cleveland & Co. | January | 21, 1897 | 77.22 |
| Fred Ruff | March | 8, 1897 | 68.00 |
| S. L. Sam. | April | 2, 1897 | 405.00 |
| C. W. Georges Mfg. Co. | March | 22, 1897 | 24.42 |
| J. Shapley | April | 28, 1897 | 223.09 |
| C. Hoffman | May | 6, 1897 | 13.25 |
| W. D. Cleveland | April | 9, 1897 | 1634.20" |

The last order included the sums mentioned in the preceding orders to Cleveland & Co. and an additional sum of $134.20. They were given for a partnership debt of Donaldson & Hines to Cleveland & Co., which was not incurred in connection with the contract with the county. This is also true of the claim of C. W. Georges Manufacturing Company. The assignment to Autrey & Co. was contested by Donaldson & Hines and the other assignees upon the allegation that it was given by Donaldson for an individual debt of his own. Upon this issue there was a conflict of evidence, and the finding of the court that the assignment was given by Donaldson, acting for his firm, for money borrowed from Autrey upon the representation that it was wanted to aid in carrying out this contract is sustained by the evidence.

Donaldson and Hines both testified, and neither denied that Donaldson had authority to borrow money for firm use, their contention being that the assignment to Autrey & Co. was unauthorized because given for an individual pre-existing debt of Donaldson. The evidence shows that the firm did borrow money from Everts for the same purpose for which

Donaldson, according to the evidence offered by Autrey & Co., represented the loan was solicited from the latter firm. It also appeared that the firm was engaged in the grocery business in addition to that of furnishing houses. From these circumstances, unrebutted, we think the court could properly infer that the borrowing of money was within the scope of the partnership. The court below, by its judgment, allowed the county a deduction of $104 for the articles not furnished by the contractors, and $200 damages for delay, construing the clauses of the contract above set forth as prescribing a penalty and not as stipulating and fixing the damages recoverable. The court gave judgment against the county for $2680 and provided for the payment out of that sum of the amounts assigned to Autrey & Co., Cleveland & Co., first order, Everts, Cleveland & Co., second order, Georges Manufacturing Co. and Cleveland & Co. third order, in the order named, and for the payment of $75.66 of the amount of Shapley's assignment. This exhausting the amount found due by the county, the remainder of the assignees' claims were unprovided for. The court also allowed the county to pay costs incurred by it out of the fund, to be deducted ratably from the amounts allowed to assignees, and adjudged costs incurred by interveners against them.

The county of Harris, by its assignments of error, complains of the refusal of the court to allow it, as liquidated damages, $10 per day for the delay of the contractors in completing their undertaking, and we think its position is correct. The contract was of such a nature that the damage to result to the county from its breach might well have been considered by the parties to be uncertain and difficult of ascertainment. The evidence which was introduced very clearly illustrates that this has proved to be the case. A place was provided for keeping prisoners in the same building where the court for their trial was to be held. It was plainly understood that the county would have to forego the use of the courtroom and its appurtenances until the furnishing was completed. No other place combining the conveniences and appointments contemplated could be had, and the extent of the loss which might result could not have been accurately calculated. Accordingly the parties agreed in unequivocal terms that the damages to be paid should be fixed at $10 for every day's delay. That the county had an old courtroom and jail which it could and did use, does not militate against this view of the contract. The old courthouse and jail were not regarded as equal in arrangement to the new building, and, if they had been, the value of their use would perhaps be as difficult to fix as that of the new. The county was providing for a courtroom and other apartments in connection with the jail, especially adapted to the uses to which they were to be put, and the consequences of being required to use the jail in connection with the old courthouse were necessarily involved in doubt, the difficulty of solving which we have stated. The opinion evidence, considered for what it is worth, goes to prove that the damages agreed upon by the parties were not too great. The fact that the county used its old courtroom and jail and consequently did not have to expend so great an amount in rents does

not meet the question. In so doing it did not get an equivalent for the use of the new courthouse. The case is one in which we think the remark of the Supreme Court in Collier v. Betterton, 87 Texas, 442, applies: "If the damages be in their very nature uncertain or their amount indeterminate, the sum specified will be treated as fixing by stipulation the amount of the recovery." The subesquent part of that opinion relied on by appellees has reference to cases in which "the damages are reasonably susceptible of ascertainment." But, if the contract be tested by the rule stated as applicable to the latter class of cases, we do not see that, under the evidence as to the damages resulting to the county in this case, the court would be justified in treating as a penalty that which the parties themselves have said should be liquidated and stipulated damages.

We think the court erred in refusing to allow the claim of the county for $900 as stipulated damages. We agree with the court that appellant was not entitled to an allowance for an attorney's fee in defending itself.

Appellees have assigned as error the refusal of the court to adjudge the costs of the suit against the county and to charge it with interest upon the amount found to be due from it. We think in both respects the view taken by the court below was correct. Had the issue been between Donaldson & Hines and the county alone, the latter would have occupied the position of any other losing party and would have been liable for costs and for interest upon the amount which it owed. But Donaldson & Hines, by their voluntary acts, had created claims upon the fund before it matured more than enough to absorb it. The assignees take their rights from the assignors and are in no better position than they. The county, without risk to itself, could not take the responsibility of deciding questions of priority existing between the contending claimants under a condition which it had no hand in creating. Under the common law the assignments would have been ineffectual and the county, disregarding them, could have paid to Donaldson & Hines without incurring liability to the assignees. But equity gives validity to such partial assignments of choses in action because all parties may be brought before the court and protection given to the debtor; but it makes this concession upon the condition that the debtor be not subjected to more than one suit and that he be not prejudiced. Harris Co. v. Campbell, 68 Texas, 22. From the very principle upon which the rights of such assignees are founded, it should result that, under conditions such as those here existing, the debtor can not be made to pay to one until all are heard and concluded, and that he is not in the wrong in holding the fund until he can safely pay. But while the view taken by the court was correct, we think the judgment is partly wrong as to costs. The independent suit by the county was wholly unnecessary. All that was accomplished by it could have been accomplished in the pending action, and hence the costs of the second suit and of consolidating the two should have been adjudged against the county. This should also include the largely increased cost of the transcript in this appeal which the copying of all the pleadings in the second suit had occasioned. Appellee Shapley claims that he should have precedence over

Cleveland & Co. and Georges Manufacturing Company because his assignment was given for work done in putting in the furniture while theirs were given for partnership debts arising out of other transactions. The answer is that he had no lien upon this fund and his rights in it arose from his assignment alone, and the assignments take rank in the order in which they were given. Harris County v. Campbell, supra.

The fact that the county reserved in the contract the right to see that all liens against the property were discharged before making payment to the contractors could not have the effect of giving a lien where none existed. Shapley further contends that the assignment of Autrey & Co. should not be allowed because no authority in Donaldson to borrow money is shown, and none can be implied as resulting from such a partnership. We have found as a fact that the court could have properly inferred that the borrowing of money for the firm use was within the scope of the partnership as conducted by these partners. Such being the case, Autrey & Co., in lending money, had the right to rely upon Donaldson's authority and his representation, and would not be prejudiced by the fact that the money was not properly applied.

The judgment will be reversed and judgment will be here rendered that interveners, A. L. Autrey & Co., W. D. Cleveland & Co., and B. A. Everts, recover of Harris County the sum of nineteen hundred and eighty dollars, less such costs of suit as are hereinafter authorized to be deducted therefrom; that Harris County recover all costs incurred by it except those incurred in cause No. 22,020, Harris County v. Donaldson & Hines et al., including the cost of copying into the transcript on this appeal the pleadings therein which, whether made by said county or other parties to that suit, are adjudged against Harris County; that the said county is authorized to deduct from the above named sum the costs adjudged in its favor and that the said interveners recover the balance remaining ratably in proportion to the amounts in which they are held entitled to participate upon their respective assignments, viz: A. L. Autrey & Co. five hundred dollars, Cleveland & Co. twelve hundred and seventy-seven and 22-100 dollars, and B. A. Everts two hundred and two and 78-100 dollars; that all costs of this appeal be paid by the appellees herein; and that plaintiffs and interveners pay all costs incurred by them not otherwise adjudged.

*Reversed and remanded.*