KIRKPATRICK et al. v. GREAT AMERICAN INS. CO. et al. (No. 557.)

Court of Civil Appeals of Texas. Waco. Sept. 29, 1927.

Rehearing Denied Nov. 3, 1927.

1. Insurance ⬅➡213—Assignee of insurance policy and adjusted claim took only such rights as assignor had.

Where insured sold and assigned fire insurance policy and adjusted claim for face amount of policy, assignee took only such rights to fund paid by insurer into court in interpleader suit as assignor had.

2. Insurance ⬅➡580(2)—Where grantor under trust deed taking out insurance for grantee's benefit pursuant to agreement failed to have loss made payable to grantee, grantee had equitable lien on proceeds of policy.

Where grantor executing trust-deed agreed with grantee to take out insurance on property covered by trust deed for benefit of grantee and procured policy on property, but failed to have loss made payable to grantee as his interest might appear and property was destroyed by fire, grantee had an equitable lien on proceeds of policy.

3. Equity ⬅➡57—Equity regards that done which should have been done.

Equity regards that as done which should have been done.

4. Assignments ⬅➡85—Assignments take effect in order in which they are made.

Assignments, whether legal or equitable, take effect in order in which they are made.

On Motion for Rehearing.

5. Interpleader ⬅➡35—Where county court allowed interpleader attorney's fee from fund in controversy previously denied by justice court, interpleader could recover of one entitled to fund costs incurred in county court in adjudicating question of its right to fees.

Where county court allowed interpleader attorney's fee of $25, to be paid out of fund in controversy, after denial thereof by justice, interpleader was entitled to recover of one entitled to fund all court costs, if any were incurred in county court, in adjudicating question of its right to such attorney's fees.

6. Interpleader ⬅➡35—Unsuccessful claimants of funds in interpleader suit instituted in justice court held liable for costs in county court incurred by reason of their claims.

Claimants of funds in interpleader suit instituted in justice court, not establishing their rights, *held* liable for costs incurred in county court by reason of their seeking to establish their rights to fund in controversy.

7. Interpleader ⬅➡35—Rules governing disposition of court costs in litigation to determine ownership of fund in registry of court are same as rules in other cases.

Rules governing disposition of court costs in litigation to determine ownership of fund in registry of court are no different from rules applicable in other cases.

8. Interest ⬅➡1—Interest should be refused except in such cases as come within terms of statute (Rev. St. 1925, arts. 5070–5072).

Interest is of purely statutory origin and not the creation of common law, and should be refused except in such cases as come within terms of statutes (Rev. St. 1925, arts. 5070–5072).

9. Interest ⬅➡20—Unsuccessful claimants of funds in interpleader suit held not liable for interest on fund in registry of court (Rev. St. 1925, arts. 5070–5072).

Under Rev. St. 1925, arts. 5070–5072, providing for recovery of interest, claimants of funds paid into registry of court in interpleader suit instituted in justice court, who did not establish their rights to funds either in justice court or in county court, *held* not liable for interest on fund in registry of court from date judgment was rendered in justice court.

Appeal from McLennan County Court; James R. Jenkins, Judge.

Suit of interpleader filed in justice court by the Great American Insurance Company against J. G. Kirkpatrick, the Itasca National Bank, and others. From a judgment in the county court, the named defendants appeal. Affirmed as reformed.

Wear & Wear, of Hillsboro, for appellants. S. J. T. Smith, of Waco, for appellees.

STANFORD, J. This was a suit of interpleader, filed in the justice court by appellee Insurance Company, in which it alleged it had issued a fire policy covering a barn on a farm occupied by appellant Kirkpatrick, against which farm the Federal Land Bank of Houston had a first lien; that J. B. McCauley had a second lien, that the Itasca National Bank claimed some kind of lien or claim, the nature of which it did not know; that on October 14, 1925, said barn burned; that it was ready to pay the face of said policy, to wit, $200, but by reason of said adverse claims to said fund it did not know to whom said amount should be paid, and it deposited said sum in the registry of the court and prayed that all said parties be cited to appear and their respective claims to said fund determined, etc. The Land Bank answered, in substance, that it made a loan on said land to J. G. Kirkpatrick, secured by deed of trust on said land, and, in addition to the security of the land, it required the improvements to be insured with the policy

payable to it as its interest might appear; that the insurance it required covered only the' residence on said land, and that such policy was issued for its benefit and it had same in its office at Houston; that another policy was obtained on the barn for $200, and said barn was destroyed by fire and said loss adjusted at $200; that the improvements on the land formed a part of its security and that the loss of the barn lessened its security and by reason of these facts it was entitled to have said $200 credited on its loan, but that J. B. McCauley, as it was informed, had foreclosed a second lien on said land and acquired title to same, and that if so, it was willing for said $200 to be adjudged to J. B. McCauley. J. B. McCauley alleged that he was entitled to said $200 because at the time said barn was burned he had a second lien on said farm on which said barn was situated and all improvements on same, and that said lien was a valid and subsisting lien on said barn, evidenced by vendor's lien notes and deed of 'trust; that subsequent to said loss said notes were reduced to judgment in the sum of $8,056.52, and under which judgment he was entitled to the title and possession of the farm on which said barn was burned, and that his lien was first and superior to all other liens and claims to said funds, save and except a first lien held by the Federal Land Bank of Houston, and that said bank had waived its said lien in his favor and had agreed that said fund might be paid over to him; that at the time he sold said farm to J. G. Kirkpatrick and retained said second lien notes, the said J. G. Kirkpatrick expressly promised and agreed with him to procure all the insurance he could on the improvements on said farm, and that he, Kirkpatrick, would pay the premium thereon and have the usual loss payable clause attached to said policy, payable to him, J. B. McCauley, and that he relied upon said promise and agreement and believed that said loss payable clause was attached to the policy for $200 on said barn, and did not know it was not so attached until said barn was burned, etc. J. G. Kirkpatrick answered, alleging that he took out the policy of insurance on the barn on said farm and paid the premiums on said policy and said policy was in full force at the time said barn was burned; that he was the owner and in possession of said farm and barn at the time said policy was issued and at the time said barn burned, and that after the adjustment of the loss in the sum of $200, he sold and assigned said policy and adjusted claim for $200 to H. E. Chiles for the benefit of the Itasca National Bank, and asked that judgment be rendered for said bank. The Itasca National Bank answered, setting up substantially the same facts as alleged by J. G. Kirkpatrick, alleging it had purchased said claim for a valuable consideration, etc., and

prayed that it be permitted to recover said $200, etc.

The trial in the county court resulted in a judgment in favor of appellee J. B. McCauley, and J. G. Kirkpatrick and the Itasca National Bank prosecute this appeal and present the record here for review.

[1] It will be observed that the controversy in this case narrowed down to one between appellant Itasca National Bank and appellee J. B. McCauley. Whatever right, if any, the Federal Land Bank of Houston had to said $200 it relinquished to said J. B. McCauley. Whatever right, if any, appellant J. G. Kirkpatrick had to said $200 he transferred to the appellant bank. At the time this transfer to said bank was made, the barn had burned and the loss had been adjusted in the sum of $200, and at said time either J. B. McCauley or J. G. Kirkpatrick had the right to receive said $200. If J. G. Kirkpatrick was the owner of and had the right to receive said fund, then the transfer conferred the same right upon the bank; but if Kirkpatrick had no such right, then his transfer conferred no right upon the bank, for by said transfer the bank took only such rights to said fund as Kirkpatrick had. So what were the rights of Kirkpatrick, if any, to said fund at the time he executed the transfer to the bank? The case was tried before the court without a jury, and, at the request of appellants, the court filed findings of fact and conclusions of law. Among other findings of fact the court found:

"I find that during the year 1919, J. B. McCauley sold to J. G. Kirkpatrick the 103 acres of land * * * and that he retained a series of vendor's lien notes against said land, which was also secured by a deed of trust on said land and improvements. * * * I further find that during the latter part of the year 1925 or early part of 1926, the said J. B. McCauley reduced his said second lien notes to judgment * * * in the approximate sum of $8,000. * * *. I further find that the said J. B. McCauley had on two previous occasions * * * instituted suit on said notes and that both of said suits had been settled and dismissed and that as a part of the consideration for such settlement and dismissal, the said J. G. Kirkpatrick had specifically agreed with the said J. B. McCauley that he would procure and maintain all of the insurance on the building and improvements situated on said farm that he was able to get, and that he would have attached to the policy or policies the loss payable clause in favor of J. B. McCauley as his interest might appear. * * * I further find, in pursuance of the obligations and agreement above mentioned, that on June 2, 1923, the said J. G. Kirkpatrick applied to A. W. Young & Son, agents for the Great American Insurance Company, and that on said date the said Young & Son did issue to him a three-year policy on the farm improvements on the land above mentioned for $200 on the barn on said farm, * * * as particularly shown by the policy No. I–251 on file in this case; but I further find said policy did not contain the loss payable clause in favor of J. B. McCauley or any-

one else. * * * I further find that neither the said McCauley or Smith (his attorney) learned that said loss payable clause was not so attached to said policy until after the barn was burned."

[2-4] The above findings of the court are fully supported by the evidence, and on such findings the trial court was correct in rendering judgment for appellee J. B. McCauley. If the mortgagor agrees with the mortgagee to take out insurance on the mortgaged property for the benefit of the mortgagee, and does procure a policy on such property, but fails to have the loss made payable to the mortgagee, as his interest may appear, the mortgagee, in case of a loss, will have an equitable lien upon the money due on such policy. Equity regards that as done which should have been done. Mosley v. Stratton (Tex. Civ. App.) 203 S. W. 397; Walter Connally & Co. v. Hopkins (Tex. Civ. App.) 195 S. W. 658; Chipman v. Carroll, 53 Kan. 163, 35 P. 1109, 25 L. R. A. 308; 4 Cooley's Ins. Briefs, § 3706; Wheeler v. Insurance Co., 101 U. S. 439, 25 L. Ed. 1056; 26 C. J. p. 442, § 590. There can be no doubt but that by reason of the obligation on the part of Kirkpatrick to insure said property for the benefit of McCauley, that J. B. McCauley acquired an equitable lien on said $200. It is also true his equitable lien accrued prior to the transfer to the Itasca National Bank, and it seems to be the settled rule of law in this state that assignments, whether legal or equitable, take effect in the order in which they are made. As said by our Supreme Court in Hess & Skinner Engineering Co. v. Turney, 110 Tex. 155, 216 S. W. 623:

"In our opinion the rule is sound, which gives priority in rank to equitable assignments in the order of their dates, without regard to notice to the debtor. * * * The debtor is fully protected because he is not affected by the assignment until notified, and the subsequent assignee, in dealing with a chose in action, is chargeable with knowledge that he can get no better right than that of his assignor."

See, also, West Texas Lumber Co. v. Tom Green County (Tex. Civ. App.) 188 S. W. 283; First Nat. Bank v. O'Neil Engineering Co. (Tex. Civ. App.) 176 S. W. 78; Henke & Pillot v. Keller, 50 Tex. Civ. App. 533, 110 S. W. 783; Southern Surety Co. v. Guaranty State Bank (Tex. Civ. App.) 275 S. W. 444; Rotsky v. Kelsay Lumber Co. et al. (Tex. Com. App.) 228 S. W. 558.

We have considered all of appellant's assignments, and, finding no error, overrule same. The judgment of the trial court is affirmed.

### On Motion for Rehearing.

[5-7] Under their fifteenth assignment, appellants contend the trial court erroneously held that the costs incurred, by reason of J.

G. Kirkpatrick and the Itasca National Bank seeking to establish their right to this fund in the county court, should be taxed against the said J. G. Kirkpatrick and the Itasca National Bank. The appellants were denied the recovery of any amount in the justice court, and were likewise denied the recovery of any amount in the county court. It is true in the county court the insurance company, having filed this as an interpleader suit, was allowed an attorney's fee of $25 to be paid out of the fund in controversy, which was denied said company by the judgment in the justice court. So the judgment in the county court, as between appellee J. B. McCauley and the insurance company, being less favorable to McCauley than the justice judgment, as between said parties, the insurance company would be entitled to recover of J. B. McCauley all court costs, if any were incurred in the county court in adjudicating this question of the interpleader's attorney's fees. But this could have no effect on the question of court costs in the county court, as between appellants and appellee J. B. McCauley, in adjudicating their rights to recover said fund. Only the court costs in the county court incurred by reason of appellants seeking to establish their right to the fund in controversy are adjudged against said appellants. This was correct. Neither do we think the rules governing the disposition of court costs in a litigation to determine the ownership of a fund in the registry of the court are in any way different from the rules applicable in other cases. This assignment is overruled.

[8, 9] Under appellants' sixteenth assignment, they contend, in effect, that the trial court erred in charging them with 6 per cent. interest on the fund in the registry of the court from the date the judgment was rendered in the justice court. The fund in controversy has never been in the possession of appellants, or either of them, but has been, since the institution of this suit, and still is, in the registry of the court. The judgment in favor of appellee McCauley is for the $200 less certain deductions, in the registry of the court. The judgment against appellants was not for any sum of money, but was, in effect, that they take nothing. The general rule is, that interest is of purely statutory origin and not, the creature of the common law, and that interest should be refused except in such cases as come within the terms of the statutes. Such is the rule in this state. Heidenheimer v. Ellis, 67 Tex. 426, 3 S. W. 666; McDaniel v. National Steam Laundry Co., 112 Tex. 54, 244 S. W. 135; Walker v. Alexander (Tex. Civ. App.) 212 S. W. 713; 33 C. J. p. 183. There are three articles of our statutes providing for the recovery of interest, to wit: Articles 5070, 5071, and 5072 of the Revised Statutes 1925. Clearly, under no one of said articles were

appellants, or either of them liable for interest on the fund in controversy.

We sustain this assignment and in part grant this motion and reform the judgment of the trial court as follows: We hereby render judgment in favor of appellee J. B. McCauley for the $200 in the registry of the court, less $25 attorney's fees allowed by the court for filing said suit of interpleader, and we adjudge all costs of this appeal against appellee J. B. McCauley. We adjudge all ·costs incurred in the justice court and county court against appellants J. G. Kirkpatrick and the Itasca National Bank. And the judgment as here reformed is hereby affirmed.